IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JAMES W. WHORLEY, | : |
|    Plaintiff, | : |
| v. | : |
| | :   Civil Action No. _3:23-cv-13_____ |
| LIFE INSURANCE COMPANY OF NORTH AMERICA and SENTARA HEALTHCARE | : |
|    Defendants. | : |

## COMPLAINT

COMES NOW the Plaintiff, JAMES W. WHORLEY ("Plaintiff" or "Mr. Whorley"), by counsel, and alleges:

### JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. § 1001, et seq., and is brought to obtain relief under Section 502(a)(1)(B) and 502(a)(3) of ERISA, 29 U.S.C. § 1132.

2. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3. Venue with respect to this action lies with the Charlottesville Division, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Plan at issue was issued in Charlottesville, Virginia.

4. The Life Insurance Company of North America ("LICNA") disability plan ("the Plan") at issue, which was sponsored and administered by Sentara Healthcare, is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C.

1

§1002(3), and is, therefore, subject to coverage of the Act pursuant to Section 4(a) of ERISA, 29 U.S.C. §1003(a).

## FACTS

1. In or around February 1992, Mr. Whorley injured his left elbow when he fell five feet backwards onto a concrete pad, shattering his left radial head, requiring surgical repair.

2. For the next 30 years, Mr. Whorley suffered from progressive pain due to the sequelae of his injury, particularly the osteoarthritis the injury produced over time.

3. Mr. Whorley also suffers from: a) degenerative disk disease of his spine, which causes him extraordinary back pain, particularly when sitting for long periods of time; b) polyneuropathy of his feet, which causes numbness and pain in his feet and which prevents him from being able to walk or stand for extended periods of time; c) right knee arthritis, which causes him pain when walking or standing; and d) severe depression and anxiety as a result of, and which contributes to, his chronic pain and inability to function, and which makes it impossible to concentrate or complete tasks in a timely manner.

4. All of these conditions have been substantiated by objective medical evidence, and their symptoms substantiated by Mr. Whorley's medical providers.

5. By 2020, Mr. Whorley's left elbow arthritis had progressed to Grade 4 osteoarthritis. At that time, COVID-caused staff shortages required Mr. Whorley to engage in far more physically demanding tasks than usual in his position as Supply Chain Manager; a position he had held at Martha Jefferson

Hospital for 26 years. For example, Mr. Whorley was required to break down, fill, and pull 1000+ lb. pallets of supplies on a regular basis, which caused him excruciating pain and caused a drastic deterioration of his elbow condition. He was also required to walk miles each day through the hospital delivering those supplies, which became more and more impossible due to his neuropathy and right knee pain.

6. By Summer of 2021, Mr. Whorley's left arm pain and dysfunction was so severe he could not lift a gallon of milk.

7. Mr. Whorley consulted with his primary care physician who referred him to Dr. Steven Hoover ("Dr. Hoover"). Dr. Hoover performed a soft tissue interposition arthroplasty surgery using cadaver tissue on Mr. Whorley's left elbow in October 2021.

8. Following the surgery, Mr. Whorley received physical therapy ("PT") until February 2022, when he was discharged from PT and referred back to Dr. Hoover due to worsening pain.

9. Dr. Hoover discussed Mr. Whorley's limited options with regard to further surgical procedures to relieve Mr. Whorley's pain, and they decided to pursue treatment from a pain management specialist, which has actually provided very limited relief.

10. Between 2020 and April 2022, Mr. Whorley communicated frequently with his colleagues and supervisors about his pain and inability to meet the demands of his job. At times, the facility made accommodations which helped to some degree, but those accommodations did not entirely restore his ability

to meet the demands of his job and they often fell by the wayside when necessity required. And Mr. Whorley struggled to keep up with even sedentary tasks associated with his job, eventually finding them absolutely impossible to perform due to his pain and difficulty concentrating, and most significantly, his inability to use his left arm at all; the restriction his providers noted and prescribed.

11. As a result of his limitations and after consulting with his providers, Mr. Whorley applied for and was approved for FMLA, and he applied for short-term disability ("STD") benefits under the Plan (the "Benefits").

12. Mr. Whorley's STD claim was denied on May 25, 2022 because according to its denial letter, New York Life Group Benefit Solutions ("NYL"), which upon information and belief is simply a third-party administrator of the Plan, determined there was not enough evidence to support a functional impairment.

13. Mr. Whorley, through counsel, appealed NYL's unfavorable decision on September 21, 2022, providing more than adequate medical documentation concerning Mr. Whorley's conditions, symptoms, and their limitations on his ability to perform the duties of his occupation.

14. Mr. Whorley also submitted with his September 21, 2022 appeal a copy of Sentara's job description for his position, which includes the ability to a) lift/carry up to 25 lbs.; b) walk up to 33% of the time; c) stand up to 33% of the time; d) sit up to 66% of the time; reach/handle up to 33% of the time; and e) use critical thinking to make decisions based upon data and consider the long term impact of those decisions, and correct ineffective solutions.

15. On October 28, 2022, NYL wrote Mr. Whorley to let him know that NYL needed an extension of up to 45 days to issue a decision on his appeal because NYL was "reviewing [his] claim with a medical professional."

16. On November 22, 2022, NYL wrote to Mr. Whorley to notify him that NYL needed another extension of time to make a decision on his appeal because it had requested his job description from Sentara, which had already been provided as an attachment to Mr. Whorley's September 21, 2022 appeal letter, and which NYL could and should have requested as it was conducting its medical review.

17. On December 20, 2022, NYL issued a letter to Mr. Whorley indicating that the company had determined that its adverse benefit decision was warranted, but that this letter did not represent a final decision, and Mr. Whorley had until January 3, 2023 to respond to its preliminary conclusions.

18. Contained in the December 20, 2022 NYL letter was a report by NYL's medical reviewer, Anthony D. Watson, M.D. that overstated Mr. Whorley's functional abilities with respect to his left arm, in direct contradiction with his treating providers, and stating that there were no other physical conditions that independently co-impaired Mr. Whorley or compounded his primary condition.

19. On January 2, 2022, Mr. Whorley, through counsel, responded to NYL's December 20, 2022 letter pointing out the following:

    a. NYL's medical reviewer, who had never examined Mr. Whorley, overstated his functional capacity with respect to his left arm, and Mr.

      Whorley's providers, whose opinions carry more weight as a matter of law, documented in the records provided to NYL that Mr. Whorley could not use his left arm at all, even to type, in the performance of his work duties due to his grade 4 arthritis.

    b. NYL and its reviewer entirely ignored the other conditions that further co-impaired him, namely his polyneuropathy, knee pain, low back pain, and depression and anxiety, all of which Mr. Whorley substantiated in the records he provided to NYL with his September 21, 2022 appeal letter.

20. On January 18, 2023, NYL issued another non-final decision letter, which simply repeated NYL's December 20, 2022 points on Mr. Whorley's left elbow, and addressed for the first time Mr. Whorley's depression and anxiety. NYL minimized Mr. Whorley's anxiety and depression, however, writing that there is no reliable or valid clinical evidence in the medical record to support a conclusion of functional limitations due to his psychological/psychiatric impairments, and stating that there is no indication that Mr. Whorley was receiving "more intense mental health treatment" beyond the pharmacologic treatment he was receiving from his medical doctors. NYL provided a list of "more intense mental health treatments" that it would accept as proof of Mr. Whorley's psychiatric instability, including "counseling."

21. On January 30, 2023, Mr. Whorley, through counsel, responded to NYL's January 18, 2023 letter pointing out the following:

a. NYL, once again, entirely disregarded Mr. Whorley's other physical conditions beyond his left elbow conditions, all of which further limit his ability to perform the duties of his occupation.

b. While NYL addressed Mr. Whorley's depression and anxiety for the first time, its psychological reviewer downplayed the impact those conditions have on his ability to perform the duties of his occupation, and provided, as further support, records from Mr. Whorley's long-time counselor, Adrienne Consylman, M.A., P.L.C., which demonstrated that Mr. Whorley's severe depression and anxiety significantly impacted his energy level, mental processing speed, and his ability to focus and concentrate at work. Those records also demonstrated that his psychiatric/psychological conditions are worsened by his chronic physical pain, and also exacerbate his painful symptoms, in a vicious cycle. Mr. Whorley also reminded NYL that his primary care physician had been prescribing anti-depressants and anti-anxiety medications.

c. NYL's medical reviewer, Dr. Watson, who had never examined Mr. Whorley, overstated Mr. Whorley's functional capacity with respect to his left arm in contradiction with the opinions and reports of Mr. Whorley's treating providers.

22. On March 1, 2023, NYL issued its final denial regarding the Benefits. Again, NYL entirely ignored all Mr. Whorley's physical conditions and symptoms beyond those associated with his left elbow condition, it downplayed Mr.

Whorley's left elbow condition and its effect on his ability to perform the duties of his occupation, and it downplayed the severity of Mr. Whorley's psychiatric/psychological conditions and symptoms. These conclusions all directly conflict with the findings, conclusions and restrictions of Mr. Whorley's treating providers, whose opinions carry greater weight as a matter of law.

## RELEVANT LAW AND VIOLATIONS

23. Plaintiff incorporates paragraphs 1 through 22 as though fully set forth herein.

24. Section 502(a)(1)(B) of ERISA states, in relevant part: "A civil action may be brought by a…beneficiary…to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan…" 29 U.S.C. §1132(a)(1)(B).

25. Section 502(g)(1) of ERISA states, in relevant part: "In any action under this subchapter by a beneficiary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter an Order:

A. Declaring that Mr. Whorley was Disabled and therefore entitled to STD Benefits under the Plan on April 15, 2022, the date he last worked;

B. Ordering Defendants to pay to Mr. Whorley the amount of his past-due STD benefits under the Plan from May 6, 2022 to November 2, 2022, which total $23,266.72, and enforcing all his other rights under the Plan during that time;

C. Ordering Defendants to reimburse Mr. Whorley for his legal fees and costs to enforce his rights under the Plan, including but not limited to, reasonable attorneys' fees, as authorized by 29 U.S.C. §1132(g);

D. Ordering any other appropriate equitable relief as is appropriate and just.

**JAMES W. WHORLEY**

By: /s/ Beth A. Norton
Beth A. Norton
Virginia Bar Number: 87664
Attorney for Plaintiff
Norton Health Law, P.C.
1441 Sachem Place, Suite 2
Charlottesville, Virginia 22901
Telephone: (434) 978-3100
Fax: (434) 978-3101
[Email: bnorton@nortonhealthlaw.com]